UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ASSOCIATION OF THEATRICAL PRESS AGENTS AND MANAGERS, UNION NO. 18032, I.A.T.S.E., AFL-CIO, CLC, by GORDON FORBES, as SECRETARY-TREASURER,<br><br>                    Plaintiff,<br><br>             -against-<br><br>ASTOR SHOW PRODUCTIONS, INC. d/b/a BLUE MAN GROUP "TUBES," MARIA DIDIA, and MANUEL IGREJAS,<br><br>                    Defendants. | Case No. 08-CV-4395 (SAS) |

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

Douglass B. Maynard
Kenneth L. Shaitelman
AKIN GUMP STRAUSS HAUER
& FELD LLP
590 Madison Avenue
New York, NY 10022
Telephone: (212) 872-1000
Facsimile: (212) 872-1022

*Attorneys for Defendant Astor Show
Productions, Inc., d/b/a Blue Man Group*

Ronald H. Shechtman
Joshua Zuckerberg
PRYOR CASHMAN LLP
410 Park Avenue
New York, NY 10022
Telephone: (212) 326-0102
Facsimile: (212) 798-6302

*Attorneys for Defendant Maria Di Dia*

Toby M.J. Butterfield
Mason A. Weisz
COWAN, DEBAETS, ABRAHAMS & SHEPPARD LLP
41 Madison Avenue
New York, NY 10010
Telephone: (212) 974-7474
Facsimile: (212) 974-8474

*Attorneys for Defendant Manuel Igrejas*

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT...............................................................................4

STATEMENT OF FACTS ..................................................................................4

ARGUMENT.......................................................................................................6

    Standard for Motion to Dismiss..................................................................6

    POINT I: THE BREACH OF CONTRACT CLAIM SHOULD BE
    DISMISSED ..................................................................................................7

        A.    Plaintiff's State Law Breach of Contract Claim is
        Completely Preempted by Section 301 of the LMRA. ...............................7

        B.    The Breach of Contract Claim Should be Dismissed Because
        Plaintiff Failed to Exhaust the Grievance and Arbitration
        Procedures of the MBA. ..........................................................................10

    POINT II: PLAINTIFF'S TORT AND INJUNCTION CLAIMS SHOULD
    BE DISMISSED ..........................................................................................12

        A.    Plaintiff Lacks Standing to Assert the Tort and Injunction
        Claims. .....................................................................................................12

        B.    ERISA Preempts the Tort and Injunction Claims..............................16

        C.    Section 301 of the LMRA Preempts the Tort and Injunction
        Claims ......................................................................................................20

CONCLUSION...................................................................................................21

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Aetna Health, Inc. v. Davila*,
  542 U.S. 200 (2004)............................................................................................18

*Alessi v. Raybestos-Manhattan, Inc.*,
  451 U.S. 504 (1981)............................................................................................16

*Avco Corp. v. Aero Lodge No. 735*,
  390 U.S. 557 (1968)..............................................................................................8

*Baur v. Veneman*,
  352 F.3d 625 (2d Cir. 2003)..............................................................................12

*Bell Atl. Corp. v. Twombly*,
  127 S. Ct. 1955 (2007)..........................................................................................6

*Berda v. CBS Inc.*,
  881 F.2d 20 (3d Cir. 1989)..................................................................................7

*Caterpillar, Inc. v. Williams*,
  482 U.S. 386 (1987)..............................................................................................7

*Comer v. Cisneros*,
  37 F.3d 775 (2d Cir. 1994)................................................................................12

*Commc'ns Workers v. AT&T*,
  40 F.3d 426 (D.C. Cir. 1994)............................................................................11

*Cosmas v. Hassett*,
  886 F.2d 8 (2d Cir. 1989)....................................................................................6

*DelCostello v. Int'l Bhd. of Teamsters*,
  462 U.S. 151 (1983)............................................................................................11

*District 65, UAW v. Harper & Row, Publishers, Inc.*,
  576 F. Supp. 1468 (S.D.N.Y. 1983)................................................................19

*Douglas v. Am. Info. Tech.*,
  877 F.2d 565 (7th Cir. 1989) ............................................................................10

*Fernandez v. Chertoff*,
  471 F.3d 45 (2d Cir. 2006)................................................................................10

*Foy v. Pratt & Whitney Group*,
    127 F.3d 229 (2d Cir. 1997) ................................................................. ....8

*Franchise Tax Bd. v. Constr. Laborers  Vacation Trust*,
    463 U.S. 1 (1983) ............................................................................. 7 , 19

*Fulani v. League of Women Voters Educ. Fund*,
    882 F.2d 621 (2d Cir. 1989) ........................................................... 12 , 13

*Greenblatt v. Delta Plumbing & Heating Corp.*,
    68 F.3d 561 (2d Cir. 1995) ............................................................. 17, 18

*Gregory v. Daly*,
    243 F.3d 687 (2d Cir. 2001) ................................................................. .6

*Hawaiian Airlines, Inc. v. Norris*,
    512 U.S. 246 (1994) .......................................................................... .20

*Hines v. Anchor Motor Freight, Inc.*,
    424 U.S. 554 (1976) .......................................................................... 11

*Holmes v. Nat'l Football League*,
    939 F. Supp. 517 (N.D. Tex. 1996) ...................................................... 10

*Ingersoll-Rand v. McClendon*,
    498 U.S. 133 (1990) ....................................................................... 17, 18

*Kahn v. Kohlberg, Kravis, Roberts & Co.*,
    970 F.2d 1030 (2d Cir. 1992) ................................................................ 6

*Lingle v. Norge Div. of Magic Chef, Inc.*,
    486 U.S. 399 (1988) ........................................................................... .8

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) .......................................................................... 12

*McInerney v. Rensselaer Polytechnic Inst.*,
    505 F.3d 135 (2d Cir. 2007) ............................................................... 10

*Metro. Life Ins. Co. v. Taylor*,
    481 U.S. 58 (1987) ..................................................................... 7, 8, 19

*NYS Health Maint. Org. Conference v. Curiale*,
    64 F.3d 794 (2d Cir. 1995) ................................................................. 17

*Nash v. Bowen,*
    869 F.2d 675 (2d Cir. 1989)..................................................................12

*Papasan v. Allain,*
    478 U.S. 265 (1986).............................................................................6

*Philadelphia Parking Auth. v. Fed. Ins. Co.,*
    385 F. Supp. 2d 280 (S.D.N.Y. 2005)....................................................6

*Republic Steel Corp. v. Maddox,*
    379 U.S. 650 (1965)...........................................................................11

*Romney v. Lin,*
    94 F.3d 74 (2d Cir. 1996)..........................................................17, 18, 19

*Schnall v. Marine Midland Bank,*
    225 F.3d 263 (2d Cir. 2000)..................................................................6

*Shaw v. Delta Air Lines, Inc.,*
    463 U.S. 85 (1983).............................................................................16

*Smith v. Dunham-Bush, Inc.,*
    959 F.2d 6 (2d Cir. 1992)..........................................................16, 17, 19

*Sullivan v. Am. Airlines,*
    424 F.3d 267 (2d Cir. 2005)................................................................7, 8

*Tappe v. Alliance Capital Mgmt., L.P.,*
    177 F. Supp. 2d 176 (S.D.N.Y. 2001)..................................................16

*United Steelworkers v. Am. Mfg. Co.,*
    360 U.S. 564 (1960)...........................................................................11

*Varity Corp. v. Howe,*
    516 U.S. 489 (1996)...........................................................................16

*Vera v. Saks & Co.,*
    335 F.3d 109 (2d Cir. 2003)................................................................10

*Warth v. Seldin,*
    422 U.S. 490 (1975)...........................................................................13

*Wooddell v. Int'l Bhd. of Elec. Workers, Local 71,*
    502 U.S. 93, 100-01 (1991))...............................................................11

*Wynn v. AC Rochester,*
  273 F.3d 153 (2d Cir. 2001)..........................................................................8

**UNREPORTED CASES**

*Cespuglio v. Ward*, No. 03 Civ. 8603 (SAS),
  2004 WL 1088235 (S.D.N.Y. May 12, 2004) ...............................8, 9, 10, 12

*Garcia v. Lewis*, No. 05 Civ. 1153 (SAS),
  2005 WL 1423253 (S.D.N.Y. June 16, 2005) ...........................................7

*Seneca Ins. Co. v. Kemper Ins. Co.*, No. 02 Civ. 10088 (PKL),
  2004 WL 1145830 (S.D.N.Y. May 21, 2004) ...........................................6

**STATUTES & OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6)..................................................................4, 6, 10
28 U.S.C. § 1441..............................................................................6
29 U.S.C. § 1132(a)(3)......................................................................19
29 U.S.C. § 1144(a).........................................................................16
29 U.S.C. § 1145............................................................................19
29 U.S.C. § 173(d)..........................................................................11
29 U.S.C. § 185(a)...........................................................................8

## PRELIMINARY STATEMENT

Defendants Astor Show Productions, Inc., d/b/a Blue Man Group ("BMG"), Maria Di Dia and Manuel Igrejas respectfully submit this memorandum of law in support of their motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6).

This case arises out of a dispute between Plaintiff, a union, and BMG, a theatrical production company, and two individuals who worked for BMG. The union alleges that BMG improperly contributed to employee benefit trust funds and that Di Dia and Igrejas improperly obtained benefits from those trust funds. As demonstrated below, the complaint should be dismissed because Plaintiff failed to exhaust the grievance and arbitration provisions of the collective bargaining agreement at issue before bringing an action for breach of contract. Plaintiff also asserts a number of tort claims and a claim for an injunction. Those claims are defective and should be dismissed because Plaintiff does not have standing and because those claims are preempted by ERISA and Section 301 of the Labor-Management Relations Act.

## STATEMENT OF FACTS

On April 8, 2008, Plaintiff Association of Theatrical Press Agents and Managers, Union No. 18032, I.A.T.S.E., AFL-CIO, CLC, ("ATPAM"), by Gordon Forbes, as Secretary-Treasurer, brought this action. The complaint alleges breach of contract against all Defendants (Count I). Plaintiff also asserts tort claims and a claim for an injunction. Specifically, the complaint alleges fraudulent misrepresentation against BMG (Count II); fraudulent concealment against Di Dia (Count III) and Igrejas (Count IV); negligent misrepresentation against all Defendants (Count V); unjust enrichment against Di Dia and Igrejas (Count VI); and a claim for an injunction against all Defendants (Count VII).

4

The complaint alleges that BMG is an Off-Broadway theatrical production. Complaint ¶ 4. According to the complaint, Di Dia and Igrejas were employed by BMG pursuant to Standard Individual Contracts of Employment ("SICs") with ATPAM that incorporate all of the terms and provisions of the Minimum Basic Agreement ("MBA"), a collective bargaining agreement between ATPAM and the Off-Broadway League. *See id.* ¶¶ 7, 9. The complaint alleges that employers subject to the MBA are required to contribute to the employee benefit trust funds, specifically the League-ATPAM Pension Trust Fund, the League-ATPAM Welfare Trust Fund, and the League-ATPAM Annuity Trust Fund (the "Trust Funds"). *See id.* ¶ 11.

According to the complaint, since in or about 1992, BMG has submitted weekly reports listing Di Dia and Igrejas as employees and has remitted contributions on their behalf to the Trust Funds. *See id.* ¶ 13. Plaintiff alleges that these weekly remittance reports constitute a representation that Di Dia and Igrejas are performing work they were engaged to perform under the SICs and are eligible to receive benefits from the Trust Funds and, as a result, Di Dia and Igrejas have received benefits from the Trust Funds. *See id.* ¶¶ 13, 19. Lastly, Plaintiff alleges that "for some substantial period of time commencing in or about 2003" neither Di Dia and Igrejas have been performing the work they were engaged to perform for BMG under the terms of the SICs. *See id.* ¶¶ 14-18.

In short, Plaintiff seeks damages and injunctive relief based on an alleged "scheme" by Defendants to "obtain for Di Dia and Igrejas health, welfare, pension and annuity benefits from employee benefit trust funds established by ATPAM and the Broadway League, notwithstanding that neither Di Dia or Igrejas is an eligible employee entitled to such benefits under the terms of the governing documents." *See id.* ¶ 1.

This case was removed to this Court from the Supreme Court of New York, County of New York based on federal question jurisdiction. 28 U.S.C. §§ 1441 and 1446.

In accord with the Court's Individual Rules and Procedures, the parties have exchanged pre-motion letters addressing the merits of this motion.

## ARGUMENT

**A.     Standard for Motion to Dismiss**

In considering a motion to dismiss for failure to state a claim, the Court must accept the allegations contained in the complaint as true and draw all reasonable inferences therefrom in favor of the non-moving party. *Philadelphia Parking Auth. v. Fed. Ins. Co.*, 385 F. Supp. 2d 280, 286 (S.D.N.Y. 2005). "The complaint, however, 'must include allegations concerning each of the material elements necessary to sustain recovery under a viable legal theory.'" *Seneca Ins. Co. v. Kemper Ins. Co.*, No. 02 Civ. 10088 (PKL), 2004 WL 1145830, at *3 (S.D.N.Y. May 21, 2004), *aff'd*, 133 F. Appx. 770 (2d Cir. 2005) (citation omitted). The complaint should be dismissed if the plaintiff fails to allege the elements of its cause of action. *Kahn v. Kohlberg, Kravis, Roberts & Co.*, 970 F.2d 1030, 1039-42 (2d Cir. 1992). Moreover, a plaintiff must allege "more than labels and conclusions" to establish a viable cause of action. *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

In deciding a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court is permitted to consider only "the facts alleged on the face of the complaint and . . . any documents attached as exhibits or incorporated by reference." *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989) (citations omitted). The Court may consider outside documents that are integral to the complaint, regardless of whether those documents are attached to the complaint, so long as the pleader has given notice of them or refers to them. *See Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001); *Schnall v. Marine Midland Bank*, 225 F.3d 263, 266 (2d Cir. 2000). "[W]hile courts

6

generally do not consider matters outside the pleadings, they may consider documents attached to the pleadings, documents referenced in the pleadings, or documents that are integral to the pleadings in order to determine if a complaint should survive a 12(b)(6) motion." *Garcia v. Lewis*, No. 05 Civ. 1153 (SAS), 2005 WL 1423253, *3 (S.D.N.Y. June 16, 2005).

**POINT I**

**THE BREACH OF CONTRACT CLAIM SHOULD BE DISMISSED**

Count I of the complaint, based on alleged breach of the MBA and the SICs, is fashioned as a state law breach of contract claim. However, because that claim arises out of a collective bargaining agreement and is dependent upon the interpretation of that agreement, the doctrine of "complete preemption" transforms it into a claim arising under Section 301 of the Labor-Management Relations Act ("LMRA"). The claim is deficient under Section 301 and should be dismissed because Plaintiff has failed to exhaust the applicable grievance and arbitration remedies under the MBA.

**A.    Plaintiff's State Law Breach of Contract Claim is Completely Preempted by Section 301 of the LMRA.**

Certain federal statutes are construed to have such "extraordinary" preemptive force that state law claims coming within the scope of them are transformed, for jurisdictional purposes, into federal claims. *Sullivan v. Am. Airlines*, 424 F.3d 267, 272 (2d Cir. 2005); *see also Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63-64 (1987); *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 24 (1983); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393-94 (1987); *Berda v. CBS Inc.*, 881 F.2d 20, 22 n.1 (3d Cir. 1989) (noting that "the claim is actually considered to arise under the federal law that displaces the state law"). This transformation is known as "complete" preemption.

7

The Supreme Court has held that one federal statute that has the "extraordinary" preemptive force required for complete preemption is Section 301 of the LMRA, 29 U.S.C. § 185(a), which provides for federal jurisdiction over "suits for violation of contracts between an employer and a labor organization representing employees." *Id.*; *see also Metro. Life*, 481 U.S. at 64; *Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 558-62 (1968); *Sullivan*, 424 F.3d at 272. Thus, state law claims coming within the scope of Section 301 may, in certain circumstances, be transformed into Section 301 claims.

For this transformation to occur, Section 301 must actually preempt the state law. As the Supreme Court has articulated the test, where resolution of a state law claim depends upon an interpretation of a collective bargaining agreement, the application of state law is preempted by the LMRA. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 405-06 (1988); *see also Wynn v. AC Rochester*, 273 F.3d 153, 157-58 (2d Cir. 2001); *Foy v. Pratt & Whitney Group*, 127 F.3d 229, 233 (2d Cir. 1997). "Section 301 preemption applies in *any* case that raises questions about the construction of, or rights and responsibilities under, a collective bargaining agreement …." *Cespuglio v. Ward*, No. 03 Civ. 8603 (SAS), 2004 WL 1088235, at *3 (S.D.N.Y. May 12, 2004) (emphasis in original).

In this case, Plaintiff's state law breach of contract claim satisfies the prerequisites for complete preemption. First, the breach of contract claim comes within the scope of Section 301, which involves "suits for violation of contracts between an employer and a labor organization representing employees." Plaintiff alleges that Defendants violated the MBA because of representations and contributions to certain employee benefit funds made by BMG on behalf of Di Dia and Igrejas. *See* Complaint ¶¶ 13-28. ATPAM is a union and the collective bargaining representative of people who work as theater or house managers, company managers, press

agents, marketing directors, and casting directors in various theater productions. *See id.* ¶ 2. The Off-Broadway League is the collective bargaining representative of various employers engaged in producing Off-Broadway shows in New York City.[1]

Plaintiff also alleges that Defendants violated two SICs. *See* Complaint ¶¶ 24-26. These contracts are between the employee, the employer, and the Union. In fact, ATPAM is a required signatory to the contracts. *See* Standard Individual Contract of Employment, ¶ 13 (noting that "all contracts to be valid must have the signature of Union Official and the Union Seal") attached as Exhibit 1 to the accompanying Affidavit of Kenneth L. Shaitelman, dated June 10, 2008. Thus, the SICs are "contracts between an employer and a labor organization representing employees." *Accord* Complaint ¶¶ 7, 9.

Second, resolution of Plaintiff's breach of contract claim clearly depends upon an interpretation of the relevant agreements. Analysis of the MBA is required to determine whether it is still effective and binding upon the parties. That agreement must be analyzed to evaluate Plaintiff's claims that Defendants Di Dia and Igrejas should not have received benefits from the Trust Funds because they were not in fact covered under the MBA. *See* Complaint ¶¶ 13-22. Plaintiff's breach of contract claim also requires the Court to determine what the parties actually agreed to in the relevant contracts – for example, whether the MBA or the SICs required employers to make regular payments to the Trust Funds, in what amount, and on behalf of whom exactly – and whether those agreements were in any way breached in this case. *See Cespuglio,* 2004 WL 1088235, at *4 (stating that examination of a possible breach of contract requires the

---

[1] It does not matter or not whether BMG was part of the Off-Broadway League, and hence a signatory to the MBA. "Consistent with the broad application of section 301, suits will be preempted even if the defendant is a non-signatory to the collective bargaining agreement, so

Court to inquire about that breach by looking to the collective bargaining agreement at issue and asking what duties the contract created and whether the parties to the contract fulfilled those duties). Finally, the Court must interpret the MBA and the SICs to discern what legal consequences were intended by the parties to flow from any breaches of those agreements.

Because the resolution of Plaintiff's state law breach of contract claim comes within the scope of Section 301 and will necessarily require an interpretation of the MBA and the SICs, Section 301 completely preempts that claim. *See Holmes v. Nat'l Football League*, 939 F. Supp. 517, 527 (N.D. Tex. 1996); *see also Foy*, 127 F.3d at 233 (citations omitted); *Vera v. Saks & Co.*, 335 F.3d 109, 114 (2d Cir. 2003).

**B.    The Breach of Contract Claim Should be Dismissed Because Plaintiff Failed to Exhaust the Grievance and Arbitration Procedures of the MBA.**

Failure to exhaust non-judicial remedies in the context of a Section 301 claim is cause for dismissal for failure to state a claim pursuant to Rule 12(b)(6). *See McInerney v. Rensselaer Polytechnic Inst.*, 505 F.3d 135 (2d Cir. 2007) (citing *Fernandez v. Chertoff*, 471 F.3d 45, 58 (2d Cir. 2006)); *Douglas v. Am. Info. Tech.*, 877 F.2d 565, 566-67 (7th Cir. 1989) (affirming a dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted because the plaintiff did not satisfy "one of the prerequisites of an action under section 301: exhaustion of grievance and arbitration remedies under the collective bargaining agreement").

In this case, based on the allegations of the complaint and the documents incorporated by reference, it is clear that grievance and arbitration provisions cover the claims raised by Plaintiff. The MBA contains the following "Arbitration and Grievance" provision:

---

long as the suit implicates provisions of the agreement." *Cespuglio*, 2004 WL 1088235, at *4

> Whether the parties disagree on any issues relating to the interpretation or application of the MBA between ATPAM and the League of Off-Broadway Theatres and Producers, Inc., the matter may be submitted to a Grievance Committee at the request of either ATPAM, the League, or an individual producer, and if not decided by the Grievance Committee, it shall be submitted to binding arbitration by the American Arbitration Association. Each party shall share equally in the cost of such arbitration by AAA. Grievance Committee procedures shall follow the format established by the current agreement between Actors' Equity Association and the League of Off-Broadway Theatres and Producers.

MBA, § 10, attached as Exhibit 2 to the Shaitelman Aff. This provision is explicitly incorporated into the SICs. *See* Standard Individual Contract of Employment, ¶¶ 1, 5, Shaitelman Aff. Exh. 1.

The complaint fails to allege that Plaintiff sought to avail itself of these procedures. "It is a well-settled rule of labor law that parties to a collective bargaining agreement normally must seek to resolve their contract disputes under agreed-upon grievance and arbitration procedures; and where the parties have agreed to final and binding arbitration, disputes within the scope of the arbitration clause may not be pursued in a breach of contract action under section 301 of the LMRA in lieu of arbitration." *Commc'ns Workers v. AT&T*, 40 F.3d 426, 434 (D.C. Cir. 1994) (Edwards, C.J.); *see also DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163 (1983); *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 562-63 (1976); *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652-53 (1965). This requirement reflects Congress's intent that "[f]inal adjustment by a method agreed upon by the parties is . . . the desir[ed] method for settlement of grievance disputes." 29 U.S.C. § 173(d) (2006). As the D.C. Circuit has noted, that intent "'can be effectuated only if the means chosen by the parties for settlement of their differences under a collective bargaining agreement is given full play.' Courts are not to usurp those functions which collective-bargaining contracts have properly 'entrusted to the arbitration tribunal.'" *Commc'ns Workers*, 40 F.3d at 434 (quoting *Hines*, 424 U.S. at 562, and *United Steelworkers v. Am. Mfg.*

(citing *Wooddell v. Int'l Bhd. of Elec. Workers, Local 71*, 502 U.S. 93, 100-01 (1991)).

*Co.*, 363 U.S. 564, 566, 569 (1960)); *see also Cespuglio*, 2004 WL 1088235, at *4 ("Consistent with the policy underlying section 301, the Supreme Court has long required plaintiffs to exhaust whatever dispute-resolution or grievance procedures exist in the collective bargaining agreement before suing in federal court.").

## POINT II

## PLAINTIFF'S TORT AND INJUNCTION CLAIMS SHOULD BE DISMISSED

The remaining claims – for fraudulent misrepresentation and concealment, negligent misrepresentation, unjust enrichment and for an injunction – are fatally flawed because (a) Plaintiff does not have standing to assert those claims, (b) those claims are preempted by ERISA, and (c) those claims are preempted by Section 301 of the LMRA.

### A.    Plaintiff Lacks Standing to Assert the Tort and Injunction Claims.

To establish standing, a plaintiff must demonstrate that (1) he suffered an injury in fact which is "concrete and particularized" and "actual or imminent," (2) there is a causal connection between the injury and the conduct at issue, and (3) the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Comer v. Cisneros*, 37 F.3d 775, 787 (2d Cir. 1994); *Fulani v. League of Women Voters Educ. Fund*, 882 F.2d 621, 624 (2d Cir. 1989). To satisfy this burden, the party must clearly and specifically set out facts sufficient to satisfy each prong of this analysis for each claim asserted. *Baur v. Veneman*, 352 F.3d 625, 641-42 n. 15 (2d Cir. 2003).

A party has suffered an "injury in fact" when the alleged misconduct affected the party in a personal and individual way and resulted in some actual injury. *Lujan*, 504 U.S. at 560 n. 1. Stated another way, the party must allege "specific, concrete facts demonstrating that the challenged [conduct] harm[ed] him, and that he personally would benefit in a tangible way from the court's intervention." *Warth v. Seldin*, 422 U.S. 490, 508 (1975); *see also Nash v. Bowen*, 869

F.2d 675, 677 (2d Cir. 1989). A plaintiff cannot satisfy the "injury in fact" prong of the standing analysis "[a]bsent the necessary allegations of demonstrable, particularized injury." *Warth v. Seldin*, 422 U.S. at 508. If a plaintiff fails to satisfy this or any of the threshold standing requirements, the Court is without jurisdiction to entertain the case. *E.g., Fulani*, 882 F.2d at 624.

Here, Plaintiff cannot demonstrate that it has standing to assert the tort and injunction claims because it has not suffered an actual injury as a result of the alleged misconduct. The complaint itself reveals that the alleged injuries were suffered, if at all, by the Trust Funds, not Plaintiff. The complaint alleges that BMG's duty to submit weekly remittance reports listing the employees covered by the MBA and the appropriate contribution for each employee entitled to benefits from the Trust Funds is derived from "the terms of the Trust Funds' rules." *See* Complaint ¶ 11. The complaint alleges that Di Dia and Igrejas have improperly received "the health and welfare benefits, pension credits, and contributions, and annuity fund contributions provided for employees covered under its [MBA]." *See id.* ¶ 13. The complaint does not assert that BMG had a similar duty to Plaintiff or that Di Dia and Igrejas received any benefits other than those received from the Trust Funds or, more specifically, improperly received any benefits from Plaintiff.

While the complaint does claim that the "benefits, rights, and privileges" at issue are "provided by the Trust Funds *and ATPAM*," *see* Complaint ¶¶ 30, 37-38, 42-43, 46-47 (emphasis added), that conclusory allegation is insufficient. Plaintiff must allege "specific, concrete facts" demonstrating that it suffered an injury as a result of the alleged misconduct by Defendants. A mere reference to ATPAM in the complaint is not adequate. Moreover, Plaintiff's rote assertion is contradicted by the trust fund documents that Plaintiff alleges are the "governing documents."

13

*See id.* ¶ 1.  The complaint itself – and the trust fund documents –establish that the benefits at issue are the health and welfare benefits, pension credits and contributions, and annuity fund contributions provided for employees by the Trust Funds.  Plaintiff is not, and has not alleged, that it is responsible for administering or providing these benefits.[2]

On the contrary, these Trust Funds are each unique legal entities, separate and apart from ATPAM, governed by the individual Fund Agreements and operated by a joint labor-management council of fund Trustees.  *See* Agreement and Declaration of Trust Establishing the I.A.T.S.E. Annuity Fund, § II.2 ("The Trust is established for the exclusive purpose of providing certain retirement and related benefits to Covered Employees and their Beneficiaries under the Plan, and shall further provide the means for financing and maintaining the operation and administration of the Trust and the Plan in accordance with this Agreement, the Plan, and applicable law."); Agreement and Declaration of Trust Establishing the League-ATPAM Pension Trust Fund, § 2.2 ("The Trust is established for the exclusive purpose of providing certain pension and related benefits to Covered Employees under the Plan, and shall further provide the means for financing and maintaining the operation and administration of the Trust and Plan in accordance with this Agreement, the Plan, and applicable law."); Agreement and Declaration of Trust Establishing the League-ATPAM Welfare Trust Fund, § 2.2 ("The Trust is established for the exclusive purpose of providing certain health, welfare and/or related benefits to Covered Employees under the Plan, and shall further provide the means for financing and maintaining the

---

[2] While the Complaint states that Forbes is a union-appointed trustee of the League-ATPAM Pension Trust Fund and the League-ATPAM Welfare Trust Fund, this is not sufficient to create a basis for standing.  The Trust Funds must designate Forbes to bring an action on the Funds' behalf.  No such allegation is included in the Complaint.  Moreover, as Forbes is not a union-appointed trustee of the I.A.T.S.E. Annuity Fund, Plaintiff's standing to bring claims on behalf of that Fund is even more attenuated.

operation and administration of the Trust and the Plan in accordance with this Agreement, the Plan, and applicable law."). For this reason, only the Trustees can litigate or settle claims on behalf of the Trust Funds. *See* Agreement and Declaration of Trust Establishing the I.A.T.S.E. Annuity Fund, § V.9(g) ("The Trustees may, in their sole discretion, seek judicial protection, by any action or proceeding they may deem necessary, to settle their accounts or to obtain judicial determination or declaratory judgment as to any question of construction of this Agreement or instruction as to any action thereunder."); Agreement and Declaration of Trust Establishing the League-ATPAM Pension Trust Fund, § 5.5(j)(4) ("[T]he Board is hereby empowered in its sole and absolute discretion to... sue or defend suits or legal proceedings to protect or enforce any interest in the Trust Fund and to represent the Trust Fund in suits or legal proceedings in connection with any matter in any court."); *accord* Agreement and Declaration of Trust Establishing the League-ATPAM Welfare Trust Fund, § 5.5(j)(4); *see also* I.A.T.S.E. National Benefit Funds Contributions & Collections Handbook ("The Trustees, or their duly authorized representative, shall have sole and exclusive authority to determine whether a contribution has been made by a good faith mistake of fact or law and shall have full discretion in applying the Funds' rules regarding the return of mistaken contributions."), attached as Exhs. 3 to 6, respectively, to the Shaitelman Aff.

Nor has Plaintiff alleged facts sufficient to demonstrate that ATPAM would "benefit in a tangible way from the court's intervention" because only the Trust Funds would benefit from the court's intervention as it relates to the alleged misrepresentations of Di Dia's and Igrejas's eligibility to participate in these funds. Thus, Plaintiff has not suffered any injury as a result of Defendants' alleged misrepresentations made to the Trust Funds. ATPAM's mere reference to itself as part of these allegations is contradicted by the wording of the Trust Funds' operative

documents, and ATPAM's conclusory allegations are not sufficient to demonstrate actual injury for purposes of standing.

### B.    ERISA Preempts the Tort and Injunction Claims.

In enacting ERISA, Congress created a law to protect "employee pensions and other benefits by providing insurance ... specifying certain plan characteristics in detail ... and by setting forth certain general fiduciary duties applicable to the management of both pension and nonpension benefit plans." *Varity Corp. v. Howe*, 516 U.S. 489, 496 (1996). The Supreme Court has specifically stated that through ERISA "Congress intended ... to establish pension plan regulation as exclusively a federal concern." *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 523 (1981).

Section 514(a) of ERISA, 29 U.S.C. § 1144(a), is Congress's attempt to codify that exclusivity. That section is ERISA's "broadly worded" and "deliberately expansive" preemption clause. *Smith v. Dunham-Bush, Inc.*, 959 F.2d 6, 8 (2d Cir. 1992) (citations omitted); *Tappe v. Alliance Capital Mgmt., L.P.*, 177 F. Supp. 2d 176, 187 (S.D.N.Y. 2001) (noting that the Supreme Court has "long acknowledged that ERISA's pre-emption provision is clearly expansive" and that the Court has, at various times, stated that the preemption provision has "broad scope," an "expansive sweep," and is "conspicuous for its breadth"). Section 514(a) explicitly preempts "any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan . . .." *Smith*, 959 F.2d at 8 (emphasis added). A law "relates to" an employee benefit plan if it has "connection with" or "reference to" such a plan. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96- 97 (1983). The Second Circuit has held that a state law "relates to" ERISA plans if it either (1) "makes explicit reference to ERISA plans," or (2) would disserve the basic purpose of preemption in ERISA § 514, "namely to avoid a multiplicity of regulation in order to permit the

nationally uniform administration of employee benefit plans." *Greenblatt v. Delta Plumbing &*
*Heating Corp.*, 68 F.3d 561, 574 (2d Cir. 1995) (citation and internal quotation marks omitted).[3]

Here, Plaintiff's tort and injunction claims are preempted on both grounds. First, those
claims are preempted because the complaint explicitly asserts that the Trust Funds are ERISA
plans. *See* Complaint ¶ 12. The Second Circuit has stated that "[a] reference to ERISA plans
may be explicit without actually using the term "ERISA plans." *See Romney v. Lin*, 94 F.3d 74,
78 (2d Cir. 1996). That same court also held that "a state law of general application, with only
an indirect effect on a pension plan, may nevertheless be considered to "relate to" that plan for
preemption purposes. *Smith*, 959 F.2d at 9. The touchstone in evaluating whether a state law is
in fact preempted by ERISA is whether the state law has a "relationship" to ERISA plans or
"affects" ERISA plans in some manner. *NYS Health Maint. Org. Conference v. Curiale*, 64 F.3d
794, 800 (2d Cir. 1995); *Romney*, 94 F.3d at 79.

In the instant case, it is clear that Plaintiff's state law causes of action are tightly
connected to ERISA plans. Indeed, the complaint is entirely based on allegations related to the
Trust Funds, which the complaint itself alleges are ERISA plans. *See* Complaint ¶¶ 12, 29, 30,
32, 35, 37, 38, 40, 42, 43, 45-47, 49, 51. In *Smith*, 959 F.2d at 10, the Second Circuit found a
similar reference in the complaint in that case to be indicative of preemption. *See id.* ("[Plaintiff]
makes explicit reference to the pension plan in his complaint."). Furthermore, as in *Smith*, the
existence of the Trust Funds would be a critical factor in establishing the extent of liability under
state common law. *Id.*; *see also Ingersoll-Rand v. McClendon*, 498 U.S. 133, 140 (1990) ("The
Texas cause of action makes specific reference to, and indeed is premised on, the existence of a

---

[3] In *Romney v. Lin*, 94 F.3d 74, 78 (2d Cir. 1996), the Second Circuit made clear that in
the context of ERISA preemption, "state law" includes both state statutory law and state

pension plan … Because the court's inquiry must be directed to the plan, this judicially created cause of action 'relate[s] to' an ERISA plan.").

Second, Plaintiff's tort and injunction claims are preempted because they disserve the basic purpose of preemption in ERISA § 514.  Each of those claims, if allowed to continue, would undermine "the nationally uniform administration of employee benefit plans" by providing "an alternative enforcement mechanism to [ERISA] § 502(a)." *Greenblatt*, 68 F.3d at 574 (citation and quotation marks omitted); *see also Romney*, 94 F.3d at 80.  "Congress intended [ERISA] § 502(a) to be the exclusive remedy for rights guaranteed under ERISA . . . ." *Ingersoll-Rand*, 498 U.S. at 144.  If parties were free to obtain remedies under state law that Congress rejected in ERISA, this exclusivity would be undermined.  *See Aetna Health, Inc. v. Davila*, 542 U.S. 200, 208-09 (2004).

Plaintiff has brought state law claims for fraudulent misrepresentation, fraudulent concealment, negligent misrepresentation, unjust enrichment, and an injunction to prevent and recover for damages connected with representations made and monies owing to certain employee benefit plans.  According to Plaintiff, the alleged representations and monies were connected with duties set forth in the MBA, the SICs, and the terms of the various benefit plans at issue.  By fashioning its claims under state law (rather than under ERISA), Plaintiff is attempting to pursue causes of action and obtain remedies that fall squarely within the enforcement mechanisms of ERISA.

That Plaintiff's state law causes of action are duplicative of those in ERISA is clear. ERISA § 502(a) already provides a means for enjoining the action Plaintiff complains of and for collecting damages.  Under ERISA § 502(a)(3), a plan fiduciary may sue "to enjoin any act or

---

common-law causes of action.

practice which violates *any provision of this subchapter* or *the terms of the plan*, or . . . to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce *any provisions of this subchapter* or *the terms of the plan*." 29 U.S.C. § 1132(a)(3) (emphases added).

ERISA § 515, one of ERISA's substantive requirements, provides: "Every employer who is obligated to make contributions to a multi-employer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. Thus, ERISA § 502(a) already provides a cause of action to enforce employer contributions required under the terms of a collective bargaining agreement or under the terms of a plan: relief may be had pursuant to ERISA § 515. *See Romney*, 94 F.3d at 78.[4]

Because ERISA preempts state law, Defendants cannot be held liable under state law. *See Romney*, 94 F.3d at 80-81; *District 65, UAW v. Harper & Row, Publishers, Inc.*, 576 F. Supp. 1468, 1487 (S.D.N.Y. 1983) (noting that plaintiff's complaint contained "allegations such as

_____

[4] Plaintiff may argue that since it is not a plan fiduciary, it does not have standing to sue under ERISA § 502(a)(3). This is correct, and it provides a hint as to why Plaintiff failed to plead claims under ERISA. In enacting ERISA, Congress carefully considered which parties should be allowed to bring suit regarding employee benefit plans. ERISA § 502(a), 29 U.S.C. § 1132(a), provides that an action may be brought by a "participant, beneficiary, or fiduciary." ERISA § 3(7), (8), (21), 29 U.S.C. §§ 1002(7), (8), (21). As the Second Circuit has noted, ERISA § 502(a) contains "six carefully integrated civil enforcement provisions," and Congress's inclusion of certain parties and exclusion of others would be completely undermined if other parties could freely raise claims. *Smith*, 959 F.2d at 11; *see also District 65, UAW v. Harper & Row, Publishers, Inc.*, 576 F. Supp. 1468, 1476 (S.D.N.Y. 1983) (stating that a union had no standing because it was not a "participant, beneficiary, or fiduciary" under ERISA and dismissing claims). Nevertheless, the Supreme Court has made clear that standing is not implicated in the preemption inquiry. *See Metro. Life*, 481 U.S. at 64; *Franchise Tax Bd.*, 463 U.S. at 24-27 (emphasizing that preemption under ERISA § 514 and standing under ERISA § 502(a) are to be considered separately); *Smith*, 959 F.2d at 10 ("Although appellant's suit is

unjust enrichment, fraud, and conversion[,]" and dismissing all of them "because they have been preempted by ERISA …").

### 3.     Section 301 of the LMRA Preempts the Tort and Injunction Claims.

Plaintiff's tort and injunction claims also should be dismissed because they are preempted by Section 301 of the LMRA. "[W]here the resolution of a state-law claim depends on an interpretation of [a] collective-bargaining agreement, the claim is pre-empted." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 260-62 (1994) (citations omitted). Any adjudication of Plaintiff's tort claims in this case will require the Court to interpret the MBA and the SICs. For example, as discussed above, the Court will have to analyze those agreements to determine whether they placed a duty on Defendants to contribute to the Trust Funds, and if so, the nature and scope of that duty (and any corresponding duty to adhere to the rules of the Trust Funds). Accordingly, Plaintiff's remaining state law claims are preempted by Section 301 and should be dismissed.

---

preempted, it may be removed only if it comes within the scope of ERISA's civil enforcement provisions.").

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter an order dismissing the complaint.

Dated: June 10, 2008
      New York, New York

Respectfully submitted,

| AKIN GUMP STRAUSS HAUER & FELD LLP | PRYOR CASHMAN LLP |
|---|---|
| *Kenneth L. Shaitelman* | *Ronald H. Shechtman* |
| Douglass B. Maynard | Ronald H. Shechtman |
| Kenneth L. Shaitelman | Joshua Zuckerberg |
| 590 Madison Avenue | 410 Park Avenue |
| New York, New York 10022 | New York, NY 10022 |
| Telephone: (212) 872-1000 | Telephone: (212) 326-0102 |
| Facsimile: (212) 872-1022 | Facsimile: (212) 798-6302 |
| *Attorneys for Defendant Astor Show Productions, Inc. d/b/a Blue Man Group* | *Attorneys for Defendant Maria Di Dia* |

COWAN, DEBAETS, ABRAHAMS & SHEPPARD LLP

*Toby M.J. Butterfield*

Toby M.J. Butterfield
Mason A. Weisz
41 Madison Avenue
New York, NY 10010
Telephone: (212) 974-7474
Facsimile: (212) 974-8474

*Attorneys for Defendant Manuel Igrejas*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of June 2008, I caused a true and correct copy of this Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint to be served by UPS Overnight Delivery on Plaintiff's attorneys at the following address:

Jane Lauer Barker
Michael D'Angelo
PITTA & DREIER LLP
499 Park Avenue
New York, New York 10022

*Kenneth L. Shaitelman*

Kenneth L. Shaitelman